

# THE ATTORNEY GENERAL
## OF TEXAS

December 31, 1986

JIM MATTOX
ATTORNEY GENERAL

Honorable Gary Thompson
Chairman
Committee on County Affairs
Texas House of Representatives
P. O. Box 2910
Austin, Texas   78769

Opinion No.   JM-610

Re: Construction of section 6a, of article 1269k, V.T.C.S., which addresses conflicts of interest by employees of housing authorities

Dear Representative Thompson:

You inquire about the conflict of interest provision applicable to employees of a county housing authority established under article 1269k, V.T.C.S.  You ask:

> Is it a violation under article 1269k, V.T.C.S. . . . for an employee of a housing authority to serve as a consultant or bookkeeper for another housing authority?

> Is it a violation of the above-referenced statute for an employee of a housing authority to own a home included in another housing project (outside of the jurisdiction of the authority for whom he works)?

Article 1269k, V.T.C.S., authorizes each county of the state to establish "a public body corporate and politic to be known as the 'housing authority' of the county. . . ."  V.T.C.S. art. 1269k, §23a. A housing authority has the following powers, among others:

> Within its area of operation:  to prepare, carry out, acquire, lease, and operate housing projects; to provide for the construction, reconstruction, improvement, alteration, or repair of any housing project or any part thereof.

V.T.C.S. art. 1269k, §8(b).

Unless a different meaning appears from the context,

> '[h]ousing [p]roject' shall mean any work or undertaking:  (1) to demolish, clear, or remove buildings from any slum area; such work or undertaking may embrace the adaption of such area

> to public purposes, including parks or other
> recreational or community purposes; or (2) to
> provide decent, safe, and sanitary urban or rural
> dwellings, apartments, or other living accomoda-
> tions for persons of low income; such work or
> undertaking may include buildings, land, equip-
> ment, facilities, and other real or personal
> property for necessary, convenient, or desirable
> appurtenances, streets, sewers, water service,
> parks, site preparation, gardening, administra-
> tive, community, health, recreational, educa-
> tional, welfare, or other purposes; or (3) to
> accomplish a combination of the foregoing. The
> term 'housing project' also may be applied to the
> planning of the buildings and improvements, the
> acquisition of property, the demolition of
> existing structures, the construction, reconstruc-
> tion, alteration, and repair of the improvements
> and all other work in connection therewith.

V.T.C.S. art. 1269k, §3(i). In some provisions of article 1269k,
V.T.C.S., "housing project" is used in a narrower sense, to refer to a
multi-unit dwelling constructed by a housing authority. Id. §§6(a),
8(c), 9, 10.

A board of commissioners appointed by the county commissioners
court exercises the powers of a county housing authority. V.T.C.S.
art. 1269k, §§5, 23a. The housing authority is empowered to employ
technical experts and other employees as it may require and to
delegate to its agents or employees such powers as it deems proper.
V.T.C.S. art. 1269k, §5.

The Housing Authorities Law, since its enactment in 1937, has
prohibited commissioners and employees of an authority from acquiring
"any interest, direct or indirect, in any housing project. . . ."
Acts 1937, 45th Leg., ch. 462, §6, at 1148. The conflict of interest
provision was amended in 1983 by House Bill No. 1505 of the Sixty-
eighth Legislature. Sections 6 and 6a of article 1269k now read as
follows:

> Sec. 6. Interested Commissioners. (a) No
> commissioner of an authority shall own, acquire,
> or control any interest, direct or indirect, in
> any housing project or in any property included or
> planned to be included in any project. Nor shall
> he have any interest, direct or indirect, in any
> contract or proposed contract for:
>
> (1) the sale of land to be used for a housing
> project;

(2)   the construction of a housing project; or

(3)   the sale of materials or services to be furnished or used in connection with any housing project.   Nor shall he have any dealings for pecuniary gain with any housing project.

However, it is not unlawful for a commissioner:

(1)   to manage a housing project or to own, acquire, or control a management company rendering management services to a housing project;

(2)   to continue to own or control any interest in a housing project held by the commissioner prior to his term as commissioner; or

(3)   to own, acquire, or control any interest in or have any dealings with a housing project over which the commissioner's housing authority has no jurisdiction.

(b)   If any commissioner of an authority manages, owns, acquires, or controls an interest, direct or indirect, in any property included or planned to be included in any housing project, or if any commissioner has any other dealings for pecuniary gain with any housing project, he shall immediately disclose the same in writing to the authority.   The disclosure shall be entered upon the minutes of the authority.   Failure to so disclose such interest shall constitute misconduct of office.

(c)   [penalty]

(d)   [disqualification from future public employment].

Sec.   6a.   Interested   Employees.   (a)   No employee of an authority shall own, acquire, or control any interest, direct or indirect, in any housing project or in any property included or planned to be included in any housing project. Nor shall the employee own, acquire, or control any interest, direct or indirect, in any contract or proposed contract for:

(1)   the sale of land to be used for a housing project;

    (2)  the construction of a housing project; or

    (3)  the sale of materials or services to be furnished or used in connection with any housing project.  <u>Nor shall the employee have any dealings for pecuniary gain with any housing project, except in the performance of his duties as an employee of the housing authority</u>.

    (b)  An employee who knowingly or intentionally violates Subsection (a) of this section commits an offense.  An offense under this subsection is a felony of the third degree.

    (c)  A person finally convicted under Subsection (b) of this section is ineligible for future employment with the State, its political subdivisions, or a public corporation formed under authority of the State or a political subdivision of the State.  (Emphasis added).

Acts 1983, 68th Leg., ch. 347, §§2, 3, at 1833-35.

Your questions require us to construe section 6a.  This provision bars a housing authority employee from having certain interests in <u>any</u> housing project, whether operated by the housing authority which employs him or another housing authority.  This is an unusually broad prohibition, but it is not unique.  Former article 988, V.T.C.S., as amended in 1981, prohibited city council members from holding another office or an employment under <u>any</u> city government.  Acts 1981, 67th Leg., ch. 527, §2, at 2230; <u>see</u> Attorney General Opinion MW-572 (1982).

A reading of section 6, which prohibits housing authority commissioners from holding certain interests in housing projects, supports our interpretation of section 6a.  Section 6 prohibits commissioners from having certain interests in <u>any</u> housing project, but specifically permits interests, ownership, or dealings with "a housing project over which the commissioner's housing authority has no jurisdiction."  This exception indicates the breadth of the section 6 prohibition; absent the exception, a commissioner would be barred from having an interest in a housing project outside the jurisdiction of his housing authority.  This and other exceptions to section 6 were added by senate amendment to House Bill No. 1505.  <u>See</u> Bill File to H. B. No. 1505, 68th Leg., Legislative Reference Library (1983).  No such exceptions were added to the conflict of interest provision pertaining to employees.

We will answer your second question first.  Subsection 6a(a) bars an employee from owning "any interest . . . in any housing project. . . ."  In our opinion, an employee who owns a home included

in a housing project owns an interest in that project. An employee of a housing authority may not own a home included in any housing project, whether it is under the jurisdiction of the housing authority which employs him or another housing authority. .

Your first question concerns whether an employee of a housing authority may serve as a consultant or bookkeeper for another housing authority. Subsection 6a(a)(3) prohibits an employee from having any interest in a contract for the sale of services to be furnished in connection with any housing project. Nor may he have

> any dealings for pecuniary gain with any housing
> project, except in the performance of his duties
> as an employee of the housing authority.

The powers of a housing authority are directed at providing "housing projects," a term defined very broadly in subsection 3(i) of article 1269k, V.T.C.S. A paid bookkeeper or consultant for a housing authority would probably engage in work related to particular housing projects. If he did so, he would contract to furnish bookkeeping or consultant services to a housing project. Moreover, his work for the housing authority would involve "dealings for pecuniary gain" with the housing projects of that authority. A housing authority employee is prohibited from having such interests in and dealings with housing projects operated by another housing authority.

In our opinion, a housing authority employee could not serve another housing authority as consultant or bookkeeper if the latter work would relate to a housing project. But see V.T.C.S. art. 1269k, §11 (two or more authorities may co-operate in the exercise of their powers).

## SUMMARY

> Section 6a of article 1269k, V.T.C.S., bars an
> employee of a housing authority from serving as a
> consultant or bookkeeper for another housing
> authority or from owning a home included in
> another housing authority.

Very truly yours,

JIM  MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General